## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| ALLONHILL, LLC, | : | Case No.: 14-10663 (KG) |
| | : | |
| Reorganized Debtor. | : | |
| | : | |
| | : | |
| ———————————————— | : | |
| ALLONHILL, LLC, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No.: 16-50419 (KG) |
| | : | |
| STEWART LENDER SERVICES, INC., | : | Related Docket No. 25 |
| Defendant. | : | |
| | : | |
| ———————————————— | : | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS COUNTS I, II, III, VI, VII, AND VIII TO AVOID CONSTRUCTIVE FRAUDULENT TRANSFERS, COUNT IX TO RECOVER THE VALUE OF THE AVOIDED TRANSFERS, AND COUNT XII FOR NEGLIGENT MISREPRESENTATION

Kevin J. Mangan (Del Bar No. 3810)
Ericka F. Johnson (Del. Bar No. 5024)
**WOMBLE CARLYLE SANDRIDGE
& RICE, LLP**
222 Delaware Avenue, Ste. 1501
Wilmington, Delaware 19801
Telephone:  (302) 252-4320
E-mail:  kmangan@wcsr.com
E-mail:  erjohnson@wcsr.com

August 17, 2016

Andrew J. Gallo (*admitted pro hac vice*)
Nathaniel P. Bruhn (*admitted pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, Massachusetts 02110
Telephone:  (617) 951-8000
E-mail:  andrew.gallo@morganlewis.com
E-mail:  nathaniel.bruhn@morganlewis.com

*Counsel to Stewart Lender Services, Inc.*

## TABLE OF CONTENTS

I.   NATURE AND STATE OF PROCEEDINGS....................................................................1

II.  SUMMARY OF THE ARGUMENT .........................................................................1

III. STATEMENT OF RELEVANT FACTS .......................................................................4

IV. ARGUMENT.....................................................................................................8

    A.   STANDARD OF REVIEW................................................................................8

    B.   ALLONHILL FAILS TO STATE CLAIMS FOR CONSTRUCTIVE
        FRAUDULENT TRANSFER........................................................................9

        (1)   The Court Should Dismiss Count VI for Avoidance of Constructive
              Fraudulent Transfers Under 11 U.S.C. § 548.................................10

        (2)   The Court Should Dismiss Count I for Avoidance of Constructive
              Fraudulent Transfers Under 11 U.S.C. § 548.................................15

        (3)   Allonhill Fails to State a Claim for Avoidance of Constructive Fraudulent
              Transfers Pursuant to 11 U.S.C. § 544........................................17

        (4)   Allonhill's Claims for Recovery of the Allegedly Avoidable Transfers
              under 11 U.S.C. § 550 and C.R.S.A. § 38-8-108 Fail as a Matter of Law.....17

    C.   ALLONHILL FAILS TO STATE A CLAIM FOR NEGLIGENT
        MISREPRESENTATION .........................................................................18

        (1)   Allonhill Cannot Base a Negligent Misrepresentation Claim on Unfulfilled
              Promises Regarding Future Acts.................................................18

        (2)   Allonhill's Claim for Negligent Misrepresentation Is Barred by the Terms
              of the APA.......................................................................19

    D.   ALLONHILL'S FRAUDULENT TRANSFER CLAIMS AND NEGLIGENT
        MISREPRESENTATION CLAIM SHOULD BE DISMISSED WITH
        PREJUDICE.......................................................................22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A Good Time Rental, LLC v. First Am. Title Agency, Inc.*,
  259 P.3d 534 (Colo. Ct. App. 2011) ................................................................... 22

*Alpine Bank v. Hubbel*,
  555 F.3d 1097 (10th Cir. 2009) ......................................................................... 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................ 8

*Bedard v. Martin*,
  100 P.3d 584 (Colo. Ct. App. 2004) ................................................................. 18

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007)...................................................................................... 8, 10

*Brooks v. Timberline Tours, Inc.*,
  127 F.3d 1273 (10th Cir. 2007) ......................................................................... 20

*Campbell v. Summit Plaza Assocs.*,
  192 P.3d 465 (Colo. Ct. App. 2008) ................................................................. 18

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ............................................................................... 8

*Grynberg v. Agri Tech*,
  10 P.3d 1267 (Colo. 2000)................................................................................ 22

*In re Am. Classic Voyages, Co.*,
  384 B.R. 62 (D. Del. 2008)............................................................................... 15

*In re Charys Holdings Co.*,
  443 B.R. 628 (Bankr. D. Del. 2010) ............................................................. 9, 17

*In re Crucible Materials Corp.*,
  No. 11-53884, 2012 WL 5360945 (Bankr. D. Del. Oct. 31, 2012) ........... 10, 14, 17

*In re Exide Techs.*, 299 B.R. 732, 740 (Bankr. D. Del. 2003) ....................................... 4

*In re Fedders North America, Inc.*,
  405 B.R. 527 (Bankr. D. Del. 2009) .......................................................... 8, 9, 11

*In re Glencoe Acquisition, Inc.*,
  No. 14-50464, 2015 WL 3777972 (Bankr. D. Del. June 16, 2015)....................... 14

*In re Global Link Telecom Corp.*,
  327 B.R. 711 (Bankr. D. Del. 2005) ........................................................ 9, 10, 14

*In re Green Field Energy Servs., Inc.*,
  No. 15-50262, 2015 WL 5146161 (Bankr. D. Del. Aug. 31, 2015) ...................... 14

*In re Oakwood Homes Corp.*,
    325 B.R. 696 (Bankr. D. Del. 2005) ........................................................... 8, 9

*In re Philadelphia Entm't and Dev. Partners, L.P.*,
    549 B.R. 103 (Bankr. E.D. Pa. 2016) ........................................................ 12

*In re Plassein Int'l. Corp*,
    428 B.R. 64 (D. Del. 2010) ........................................................................ 12

*In re R.M.L., Inc.*,
    92 F.3d 139 (3d Cir. 1996) ........................................................................ 12

*In re Schultz*,
    250 B.R. 22 (Bankr. E.D.N.Y. 2000) ........................................................ 16

*In re Sunset Aviation, Inc.*,
    468 B.R. 641 (Bankr. D. Del. 2011) .......................................................... 10

*In re USDigital, Inc.*,
    443 B.R. 22 (Bankr. D. Del. 2011) ............................................................. 9

*Keller v. A.O. Smith Harvestore Products, Inc.*,
    819 P.2d 69 (Colo. 1991) ..................................................................... 19, 21

*Kool, Mann, Coffee & Co. v. Coffey*,
    300 F.3d 340 (3d Cir. 2002) ...................................................................... 15

*Larviere, Grubman & Payne, LLP v. Philips*,
    No. 07-01723, 2011 WL 650001 (D. Colo. Feb. 11, 2011) ....................... 18

*Matter of Southmark Corp.*,
    88 F.3d 311 (5th Cir. 1996) ....................................................................... 16

*Nelson v. Elway*,
    908 P.2d 102 (Colo. 1995) ........................................................................ 20

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) ...................................................................... 22

*Steak n Shake Enters., Inc. v. Globex Co., LLC*,
    110 F. Supp. 3d 1057 (D. Colo. 2015) ...................................................... 20

*Student Mktg. Grp.*,
    247 Fed. App'x 90 (10th Cir. 2007) ..................................................... 19, 20

*Town of Alma v. AZCO Const., Inc.*,
    10 P.3d 1256 (Colo. 2000) ........................................................................ 22

**Statutes**

11 U.S.C. § 544 ................................................................................................... 17

11 U.S.C. § 547 ............................................................................................. 16, 17

11 U.S.C. § 547(f) .......................................................................................... 16, 17

11 U.S.C. § 548 ..................................................................................... 9, 13, 17

C.R.S.A. §§ 38-8-105 ......................................................................................... 9, 17

C.R.S.A. §§ 38-8-106 ......................................................................................... 9, 17

**Rules**

Fed. R. Bankr. P. 7012(b) ........................................................................................ 1

Fed. R. Civ. P. 12(b)(6)........................................................................................ 1, 8

Fed. R. Civ. P. 8 ...................................................................................................... 9

Fed. R. Civ. P. 9(b) ................................................................................................. 8

## I.    NATURE AND STATE OF PROCEEDINGS

On March 25, 2016, Plaintiff Allonhill, LLC, as reorganized debtor ("Allonhill"), filed an adversary complaint (Dkt. No. 1) against Defendant Stewart Lender Services, Inc. ("SLS").  On July 18, 2016, after SLS filed its motion to dismiss the initial complaint, Allonhill filed an amended complaint (Dkt. No. 23) (the "Amended Complaint" or "Am. Compl.") against SLS. SLS submits this memorandum in support of its Motion to Dismiss Counts I, II, III, VI, VII, VIII,[1] and XII of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure (the "Federal Rules"), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

## II.    SUMMARY OF THE ARGUMENT

On August 28, 2013, Allonhill and SLS entered into an Asset Purchase Agreement (the "APA") pursuant to which SLS purchased substantially all of the assets of Allonhill for consideration of $15 million in cash, the assumption of certain liabilities and an agreement to pay an "earnout" over a three year period if certain revenue thresholds were met (the "Earnout Hurdles").  Both SLS and Allonhill were sophisticated parties represented by able counsel during the negotiation of the APA.  The APA is a 50-page contract that contains definitions that span 10 pages and over 16 pages of representations, warranties and covenants agreed to between the parties.  The parties heavily negotiated the consideration to be provided to Allonhill as part of the APA and agreed upon detailed procedures for calculation of the earnout.  The parties also agreed to a detailed set of indemnification procedures pursuant to which they waived any and all claims, including tort claims, based upon any representations relating to the subject matter of the agreement.  Despite this integrated agreement that was the product of arm's-length negotiations

---

[1] SLS also moves to dismiss Court IX to the extent that it seeks to recover the value of transfers on the basis of the constructive fraudulent transfer claims.

between sophisticated parties, Allonhill now makes the bare bones allegation that it did not receive reasonably equivalent consideration for the assets that it sold and seeks to assert a claim based upon alleged promises made prior to the execution of the contract. For the reasons set forth below, these claims fail on the face of Allonhill's complaint.

The allegations of the Amended Complaint, made to support Allonhill's breach of contract claim, undermine its claims for constructive fraudulent transfer. In the Amended Complaint, Allonhill does not allege that it did not receive reasonably equivalent value *when the APA closed.* Rather, Allonhill alleges that it *ultimately* did not receive this value because SLS, in violation of the APA, both mismanaged the business and failed to properly account for revenues so that the Earnout Hurdles would not be met. Am. Compl. ¶ 70. The allegations of breach and mismanagement are disputed, of course, and while they may be enough to keep the breach of contract claim alive at this stage, they warrant the dismissal of Allonhill's claims for constructive fraudulent transfer as a matter of law.

Allonhill asserts that, at the time the APA closed, the projected revenue stream of Allonhill's business was "upwards of $50 million annually." Am. Compl. ¶ 25. Given that the revenue threshold in the APA necessary to trigger the earnout for year 1 was $17 million, taking the allegations in the Amended Complaint as true, at the time of the sale the projected value to Allonhill of the transaction was significant. In fact, in the Debtor's First Day Declaration in this case,[2] Allonhill's manager Margaret Sue Allon stated that a primary purpose of the bankruptcy case was to maximize the value that Allonhill would receive under the APA and that a successful restructuring around this value could "enable the Debtor's equity holders, including former employees, to realize value from their membership interests." First Day Declaration ¶¶ 12-13.

---

[2] Allonhill incorporates the Amended Declaration of Margaret Sue Allon in Support of Chapter 11 Petition and First Day Motions, Main Dkt. No. 73 (the "First Day Declaration"), into the Amended Complaint by reference. Am. Compl. ¶ 11.

This means both that (a) the value that Allonhill received at the time of the transaction—the $15 million up-front payment, assumption of certain liabilities, and a future earnout based upon revenues of the business—was significant; and (b) Allonhill was solvent before and after the transaction (a fact that Allonhill represented and warrantied in section 4.16 of the APA).

Ample case law holds that a debtor cannot, as Allonhill has done here, do little more than recite the statutory elements of constructive fraudulent transfer in a complaint and hope to survive a motion to dismiss. Allonhill's Amended Complaint goes one step further. The bare bones allegations of fraudulent transfer are contradicted by the substance of the Amended Complaint suggesting that, at the time of the transfer, Allonhill was both solvent and received substantial value for the assets transferred. For this reason, the constructive fraudulent transfer claims should be dismissed with prejudice.

SLS also moves to dismiss Allonhill's negligent misrepresentation claim. A claim for negligent misrepresentation cannot be based upon promises to do certain acts in the future. Allonhill's claim is based upon alleged promises made by Jason Nadeau (at the time, SLS's CEO) as to how SLS would operate Allonhill's business after the transaction. Additionally, even if Nadeau's statements could form the basis of a negligent misrepresentation claim, they would be barred by the both the integration clause and the indemnity provisions of the APA. A sophisticated party such as Allonhill cannot assert a claim based upon alleged promises made prior to execution of an integrated agreement.

3

### III.    STATEMENT OF RELEVANT FACTS[3]

1.    Allonhill is a Delaware limited liability company that was previously involved in providing loan due diligence and credit risk management services for institutions that invest in, sell, securitize or service mortgage loans. Am. Compl. ¶ 6; First Day Dec. ¶ 7.

2.    SLS is a provider of mortgage servicing and origination support services. Am. Compl. ¶ 13.

3.    On August 28, 2013 (the "Closing Date"), Allonhill and SLS entered the APA (amended on September 30, 2013) pursuant to which Allonhill agreed to transfer certain of its assets to SLS. *Id.* ¶ 24 (a copy of the APA is attached to Allonhill's Amended Complaint as Exhibit A).

4.    Pursuant to the APA, SLS purchased from Allonhill "all right, title and interest of [Allonhill] in and to the properties, assets and goodwill, . . . that are used by [Allonhill] in connection with the Business (the "Target Assets"), other than the Excluded Assets . . . ." *Id.* at Ex. A (APA) § 1.1. The "Business," as defined in the APA, is "the ownership and operation of the mortgage due diligence and credit risk management solutions business of [Allonhill], as presently conducted." *Id.* at Ex. A (APA) § 11.1.

5.    Allonhill alleges that, as of the Closing Date, the projected revenue stream of the business was "upwards of $50 million annually." *Id.* at ¶ 25.

6.    In the APA, Allonhill represented and warrantied to SLS that it would be solvent before and after the transaction. *Id.* at Ex. A (APA) § 4.16.

7.    The purchase price was a $15 million payment due at the time of closing and the assumption by SLS of certain assumed liabilities (as defined in the APA) (the "Purchase Price").

---

[3] Facts relevant to this memorandum are drawn from the factual allegations in the Amended Complaint (which SLS accepts as true for purposes of this memorandum only) and the documents referenced in the Amended Complaint. *See, e.g.,* *In re Exide Techs.*, 299 B.R. 732, 740 (Bankr. D. Del. 2003) (court can consider documents referenced in the complaint on motion to dismiss).

*Id.* at ¶ 27 & Ex. A (APA) § 2.1. The APA also provided that Allonhill would be entitled to an earnout payment in each of the subsequent three years following the Closing Date if the Business achieved certain "Hurdle Amounts" in each year. *Id.* at ¶ 27 & Ex. A (APA) §§ 2.2, 11.1.

8.     The Year 1 Hurdle Amount for the Business was $17 million in revenue. *Id.* at ¶ 63 & Ex. A (APA) § 11.1. The Year 2 Hurdle Amount was the greater of either $17 million in revenue or the actual Year 1 revenue. *Id.* at ¶ 63 & Ex. A (APA) § 11.1.

9.     The APA contains detailed representations, warranties and covenants between the parties that span over 16 pages of the Agreement. *Id.* at Ex. A (APA) Articles IV, V & VI. The APA also contains detailed indemnification provisions pursuant to which the parties agreed as follows:

> Following the Closing Date, the sole and exclusive remedy for any inaccuracy or breach of any representation, warranty, covenant, obligation or other agreement contained in this Agreement (*or otherwise relating to the subject matter of this Agreement*) shall be indemnification in accordance with this ARTICLE VII, except with respect to any claim based on intentional fraud, and no Person will have any other entitlement, remedy or recourse, whether in contract, tort or otherwise. In furtherance of the foregoing, each Party hereby waives, to the fullest extent permitted by Law, any and all rights, claims and causes of action for any breach of any representation, warranty, covenant, obligation or other agreement set forth herein (*or otherwise relating to the subject matter of this Agreement*) it may have against the other Party hereto and its Affiliates arising under or based upon any Law, except pursuant to the indemnification provisions set forth in this Article VII.

*Id.* at Ex. A (APA) §7.5 (emphasis added).

10.     The APA included an "Entire Agreement" clause, which reads as follows:

> This Agreement (including the Schedules and Exhibits hereto) and the Ancillary Agreements represent the entire understanding and agreement between the Parties with respect to the Transactions and supersedes all prior agreements among the Parties respecting the Transactions. The Parties have voluntarily agreed to define their rights, liabilities and obligations respecting the Transaction exclusively in contract pursuant to the express terms and provisions of this Agreement; and the Parties expressly disclaim that they are owed any duties or are entitled to any remedies not expressly set forth in this Agreement.

*Id.* at Ex. A (APA) §10.5.

11.     In connection with the APA, SLS and Allonhill entered into an Employee Leasing Agreement (amended on September 30, 2013) (the "ELA"). *Id.* at ¶ 35 (a copy of the ELA is attached to Allonhill's Amended Complaint as Exhibit B). Pursuant to the ELA, SLS leased certain employees (acquired by SLS under the APA) back to Allonhill for a limited period of time. *Id.* at ¶ 36. For that time period, Allonhill continued to collect payments (the "Cash Collections") from certain clients whose contracts were acquired by SLS under the APA (the "Clients"). *Id.* at ¶¶ 31, 34 & Ex. A (APA) § 6.12. Allonhill then remitted those Cash Collections back to SLS after netting certain costs associated with the leased employees (the "Permitted Payments"). *Id.* at ¶¶ 34-36.

12.     In connection with the APA, SLS and Allonhill entered into an Escrow Agreement. *Id.* at ¶ 49 (a copy of the Escrow Agreement is attached to Allonhill's Amended Complaint as Ex. E). Among other things, the Escrow Agreement required that SLS direct $2 million of the Purchase Price to be held in escrow subject to certain rights and claims of SLS and Allonhill. *Id.* at ¶ 49 & Ex. E.

13.     Following execution of the APA, for the period from September 2013 to March 2014, Allonhill received $7,834,686 in Cash Collections from clients of the Business (which accounts had been purchased by SLS). *Id.* at ¶ 41. For that same time period, pursuant to the APA and ELA, including amendments made to each in December 2013, Allonhill remitted payments totaling $6,608,309.15 to SLS. *Id.* at ¶¶ 42, 45-46, Ex. A (APA) § 6.12 & Ex. B (ELA) ¶ 9.[4]

---

[4] $675,474.75 continued to be held by Allonhill until January 15, 2016, and is now held by a disbursing agent. *Id.* at ¶ 47.

14.     In March 2014, more than six months after the closing of the transaction with SLS, a litigation judgment of more than $25 million was entered against Allonhill (the "Aurora Judgment"). First Day Dec. ¶ 22. Allonhill subsequently filed a voluntary petition under chapter 11 of the Bankruptcy Code on March 26, 2014. Am. Compl. ¶ 7. The Aurora Judgment is currently on appeal. Id. ¶ 44.

15.     At the time of the bankruptcy filing, after the entry of the Aurora Judgment, Allonhill alleged as follows:

> By filing the Petition, the Debtor seeks to preserve its ability to maximize the value of its future rights under the Stewart APA for the benefit of all of its creditors, as well as for the benefit of holders of its membership interests. . . . A successful restructuring could likely enable the Debtor's equity holders, including former employees, to realize value from their membership interests.

First Day Dec. ¶ 13.

16.     Allonhill alleges that both Allonhill and SLS projected revenue streams of the Business to be $34 million in Year 1. Id. at ¶ 74. Despite these projections, the Business' gross revenue for Year 1 was $13,186,412 and Allonhill was not entitled to an earnout. Id. at ¶¶ 73-74.

17.     Allonhill alleges that both Allonhill and SLS projected revenue streams of the Business to be $52 million in Year 2. Id. at ¶ 76. Despite these projections, the Business' gross revenue for Year 2 was $9,729,486 and Allonhill was not entitled to an earnout. Id. at ¶¶ 75-76.

18.     Allonhill now alleges that the Business failed to reach the Earnout Hurdles due to the fact that SLS, in violation of the APA, mismanaged the Business and failed to properly record revenues for the purpose of the earnout calculations. Id. at ¶ 70.

19.     On December 17, 2015, Allonhill's Third Amended Plan of Reorganization under Chapter 11 (the "Plan") was confirmed by the Court. Id. at ¶ 8. The Plan became effective on January 15, 2016. Id. at ¶ 9.

20.    Allonhill filed its initial complaint in this matter on March 25, 2016. Dkt. No. 1.
SLS subsequently moved for partial dismissal of the constructive fraudulent transfer claims.
Dkt. Nos. 15-16. After SLS filed its initial motion to dismiss, the parties agreed that Allonhill
could amend its complaint. Dkt. No. 20. Allonhill subsequently filed its Amended Complaint,
which asserts the same claims as in the initial complaint plus an additional claim for negligent
misrepresentation.

## IV.    ARGUMENT

### A.    STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule 12(b)(6), "a complaint must contain
sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).
"[A] pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of
a cause of action will not do.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)
(quoting *Twombly*, 550 U.S. at 555).

Courts in this district apply the heightened Federal Rule 9(b) standard to constructive
fraudulent transfer claims. *See In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del.
2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy
which include a claim for relief under §§ 544 or 548, whether it is based upon actual or
constructive fraud.") (citations omitted). Courts have lowered the pleading standard, however,
for bankruptcy trustees pleading fraudulent transfer who were outside the transaction. *See In re
Fedders North America, Inc.*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) ("This is because of the
trustee's 'inevitable lack of knowledge concerning acts of fraud previously committed against
the debtor, a third party.'") (citation omitted). While Allonhill is not a trustee that benefits from

the lower standard, Allonhill's allegations fail under either standard, and SLS applies the lower Federal Rule 8 standard here.

**B.    ALLONHILL FAILS TO STATE CLAIMS FOR CONSTRUCTIVE FRAUDULENT TRANSFER**

To avoid transfers as constructively fraudulent pursuant to 11 U.S.C. § 548 and Colorado law, Allonhill must show that it (1) received "less than a reasonably equivalent value in exchange for such transfer" and (2) "was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer." 11 U.S.C. § 548(a)(1)(B); C.R.S.A. §§ 38-8-105 & 106; *see also In re Charys Holdings Co.*, 443 B.R. 628, 636 (Bankr. D. Del. 2010) ("The elements of an avoidable transfer under UFTA or UFCA, as adopted by the individual states, do not substantially vary from the elements set forth in Bankruptcy Code section 548(a)(1)(B).").

Courts in this district routinely dismiss constructive fraudulent transfer claims where insolvency and lack of reasonably equivalent value are insufficiently plead. *See, e.g., In re USDigital, Inc.*, 443 B.R. 22, 39 (Bankr. D. Del. 2011) ("Here, the Trustee fails to provide any factual allegations supporting the assertion that [the debtor] did not receive reasonably equivalent value for the secured interest . . . . In addition, the Trustee has failed to provide any support to the factual allegations that [the debtor] was insolvent or was rendered insolvent at the time it purchased [the assets]."); *In re Fedders*, 405 B.R. at 547 ("The consideration received by [debtor] is set forth in the complaint . . . and is not sufficiently alleged to be less than reasonably equivalent value. Accordingly, the complaint fails to state a claim for constructively fraudulent transfer against the Lenders."). A fraudulent transfer claim is not sufficiently plead by "merely identifying the allegedly fraudulent transfers" without alleging with specificity facts supporting the fraudulent transfer claim. *In re Oakwood Homes*, 325 B.R. at 698-99; *see also In re Global Link Telecom Corp.*, 327 B.R. 711, 718 (Bankr. D. Del. 2005). Nor is it sufficient to merely

recite the Section 548 elements. *See In re Global Link Telecom Corp.*, 327 B.R. at 718

("However, even under the more liberal pleading requirements applicable in this case, the

Amended Complaint still fails to meet its burden. Count II of the Amended Complaint simply

alleges the statutory elements of a constructive fraud action under section 548(a)(1)(B)."); *In re*

*Sunset Aviation, Inc.*, 468 B.R. 641, 650-51 (Bankr. D. Del. 2011) ("Count II of the Complaint

here falls victim to the same pitfalls described in *Bell Atlantic* and *Global Link*, as it does not

plead any actual facts, only legal conclusions. The Trustee simply provides a near verbatim

recitation of the elements of § 548 without stating any underlying facts to support these

conclusions."); *In re Crucible Materials Corp.*, No. 11-53884, 2012 WL 5360945, at *7 (Bankr.

D. Del. Oct. 31, 2012).

> **(1)    The Court Should Dismiss Count VI for Avoidance of Constructive**
> **Fraudulent Transfers Under 11 U.S.C. § 548.**

Count VI seeks to avoid as constructively fraudulent the transaction embodied by the

APA.  Specifically, Count VI seeks to avoid the transfer of (1) the Escrow Amount, (2) the

Business, and (3) the Target Assets.

> **(i)    Allonhill fails sufficiently to allege a lack of reasonably**
> **equivalent value.**

Allegations that the projected revenue for Allonhill's business well exceeded the Earnout

Hurdles belie Allonhill's bare bones contention that it did not receive reasonably equivalent

value for the sale of its business.  To sufficiently allege lack of reasonably equivalent value, a

fraudulent transfer plaintiff must do more than recite the statutory elements and identify the

contested transfers. *See In re Global Link Telecom Corp.*, 327 B.R. at 718 ("The only facts

offered by the Trust are two lists of transfers made to Avantel.  The Trusts presents no

information on . . . the value of what was received in exchange.);" *see also In re Sunset Aviation,*

*Inc.*, 468 B.R. at 650.  Where a complaint states the "consideration received" for the allegedly

fraudulent transfer, but does not sufficiently allege that consideration "to be less than reasonably equivalent value . . . the complaint fails to state a claim for constructively fraudulent transfer." *In re Fedders*, 405 B.R. at 547. Allonhill identifies the "consideration received" under the APA—$15 million Purchase Price *plus* the assumption of certain liabilities plus the potential for earnout payments over the subsequent three years—but does not include one statement alleging that the consideration is less than reasonably equivalent value (beyond reciting the statutory language). Am. Compl. ¶ 27.

To the contrary, Allonhill alleges that the consideration it received was valuable. Allonhill alleges that it received $15 million ($2 million of which was held as the Escrow Amount) and was relieved of certain liabilities associated with the Business on the Closing Date. Am. Compl. ¶ 27. Allonhill alleges that, upon execution of the APA, the projected revenue stream of Allonhill's business was "upwards of $50 million annually." *Id.* at ¶ 25. Allonhill alleges that the Target Assets sold to SLS had a projected gross revenue of $34 million in Year 1—double the revenue needed to meet the Year 1 Earnout Hurdle of $17 million and entitling Allonhill to a Year 1 Earnout Payment. *Id.* at ¶¶ 63-64, 74. In Year 2, Allonhill alleges a projected gross revenue of $52 million—entitling Allonhill to a Year 2 Earnout Payment. *Id.* at ¶ 76. Accordingly, given the business projections at the time of the transfer, the parties exchanged significant value in the form of the earnout agreement. This was confirmed even after the bankruptcy filing when, in the First Day Declaration, Ms. Allon testified that one of the primary reasons for filing the bankruptcy case was so that Allonhill could realize the future value that would be provided by the APA and that such value would "likely" lead to a return to Allonhill's equity holders. First Day Dec. ¶ 13.

Value is determined as of the date of the transfer. *In re R.M.L., Inc.*, 92 F.3d 139, 152 (3d Cir. 1996) ("Thus, so long as there is some chance that a contemplated investment will generate a positive return at the time of the disputed transfer, we will find that value has been conferred."). Accordingly, where, as here, the Amended Complaint alleges that as of the date of the transfer Allonhill estimated that Year 1 revenue would exceed the Earnout Hurdle by $17 million and Year 2 revenue would exceed the Earnout Hurdle by $18 million (the difference between the projected Year 1 Revenue of $34 million and the projected Year 2 revenue of $52 million), the value to Allonhill of the earnout, at the time of the transaction, was significant. *See In re Philadelphia Entm't and Dev. Partners, L.P.*, 549 B.R. 103, 154 (Bankr. E.D. Pa. 2016) ("However, the Trustee does not allege that, at the time the Debtor paid the License Fee to the Commonwealth, all parties did not contemplate that the investment would generate a positive return. As a result, this Court must conclude that the Trustee cannot plead any facts that would establish that the Debtor received less than reasonably equivalent value in exchange for the payment of the License Fee.") (citing *In re R.M.L., Inc.*, 92 F.3d at 151-52).

Allonhill does not plead that the parties' projections of future revenues at the time the APA was entered were mistaken. To the contrary, Allonhill's breach of contract action is premised on the fact that it would have earned significant sums under the earnout **but for** SLS's alleged mismanagement of the business that deprived it of this opportunity. *See* Am. Compl. ¶¶ 69-77. Nor does Allonhill allege other facts that would support a finding that it received less than reasonably equivalent value. Allonhill does not allege that the parties' agreement was the product of anything other than arm's-length negotiations, or that the APA was entered into in bad faith. *See In re Plassein Int'l. Corp*, 428 B.R. 64, 67 (D. Del. 2010) (listing bad faith of the transferee and whether the transaction was at arm's-length as factors to consider in determining

whether reasonably equivalent value was received).  The Amended Complaint, and the APA itself, establish that Allonhill and SLS were two sophisticated parties that negotiated a detailed consideration structure based upon available projections of future revenue.  These are not the hallmarks of a fraudulent transfer.

Having failed to plead anything beyond the statutory language to establish lack of lack of reasonably equivalent value, and having affirmatively plead the high value of the consideration it did receive, Count VI should be dismissed for failure to sufficiently plead lack of reasonably equivalent value.

(ii)    <strong>Allonhill fails sufficiently to allege insolvency.</strong>

The Amended Complaint also fails to sufficiently allege that Allonhill (i) was insolvent on the Closing Date, or was rendered insolvent by the transfers, (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Allonhill was an unreasonably small capital, or (iii) intended to incur, or believed that Allonhill would incur, debts that would be beyond Allonhill's ability to pay as they matured. *See, e.g.*, 11 U.S.C. § 548(a)(1)(B)(ii).

The Amended Complaint does little more than restate the statutory elements of insolvency verbatim, Am. Compl. ¶ 112, only including one conclusory allegation that Allonhill was insolvent on the Closing Date. *Id.* at ¶ 44 ("At the times that the parties executed the SLS APA, the amendments to the SLS APA and the ELA, and at the times of the Transfers, Allonhill was rendered insolvent as a result of, among other things, the events that led to, and the counterclaims asserted against it, in the case styled *Allonhill, LLC v. Aurora Bank, FSB . . . .*"). This allegation of insolvency relies upon the judgment in the Aurora litigation, which was not entered until March 2014, over six months after the APA closed.  Merely referencing this litigation, which was ongoing at the time the APA closed and is still under appeal, is insufficient

13

to allege insolvency. *See In re Global Link Telecom Corp.*, 327 B.R. at 718; *In re Sunset Aviation, Inc.*, 468 B.R. at 650-51; *In re Crucible Materials Corp.*, 2012 WL 5360945, at *7. While Allonhill "is not required to include precise calculations evidencing balance sheet insolvency," more is required. *In re Glencoe Acquisition, Inc.*, No. 14-50464, 2015 WL 3777972, at *4 (Bankr. D. Del. June 16, 2015) (Gross, J.) (citation omitted).

Allonhill's insolvency allegations are a far cry from the allegations of insolvency this Court held sufficient to survive a motion to dismiss in two recent decisions. In *In re Glencoe Acquisition, Inc.*, the complaint alleged, inter alia, that the debtor "acquired three entities that had extremely insufficient surpluses to cover potential claims for the insurance policies that they wrote" and that the transferred entity "did not maintain sufficient reserves to satisfy the potential claims against its then existing insurance policies." 2015 WL 3777972, at *4. This Court held that these were "sufficient allegations from which a reasonable person could infer that the totality of the Transfer and the acquisition of woefully underfunded entities caused [debtor's] insolvency." *Id.* Similarly, in *In re Green Field Energy Servs., Inc.*, No. 15-50262, 2015 WL 5146161, at *7-8 (Bankr. D. Del. Aug. 31, 2015) (Gross, J.), the "Trustee provided extensive information about the Debtors' financial condition at or around the time of the [transfer]." The "extensive information" included allegations of indebtedness, recent increases in indebtedness, operating losses, and working capital deficiencies. *Id.* Based on these alleged facts, this Court held that it could "plausibly infer [debtor's] insolvency." *Id.* at *8.

Not only do Allonhill's insolvency allegations fail to reach the sufficiency level of *In re Green Field* and *In re Glencoe*, Allonhill makes contradictory allegations evidencing that it was potentially solvent on the Closing Date. First, Allonhill represented and warrantied to SLS in the APA that it was not insolvent and would not be rendered insolvent by the transaction. Am.

Compl. Ex. A (APA) § 4.16. Second, Allonhill alleges that the consideration it received under the APA was valuable. Allonhill alleges that it received $15 million ($2 million of which was held as the Escrow Amount) and was relieved of certain liabilities associated with the Business on the Closing Date. *Id.* at ¶ 27. Allonhill also alleges that, upon execution of the APA, the projected revenue stream of Allonhill's business was "upwards of $50 million annually." *Id.* at ¶ 25. As described above, Allonhill alleges that the projected revenue of the Target Assets was sufficiently high to entitle Allonhill to earnout payments in Year 1 and Year 2. *Id.* at ¶¶ 74, 76. While SLS is not asking the Court to engage in a solvency analysis at the motion to dismiss stage, these allegations of significant projected revenues,[5] which the Court must accept as true at this stage, contradict Allonhill's allegation of insolvency (both before the sale and after the sale due to the projected earnout payments) and support dismissal of the fraudulent transfer claims.

The First Day Declaration further highlights the Amended Complaint's internal inconsistencies and supports dismissal for failure to plead insolvency. By stating in the First Day Declaration that the potential value of the APA included a "likely" return to Allonhill's equity holders, Allonhill acknowledged that the potential value from the APA would "likely" render Allonhill solvent. Importantly, these allegations of potential solvency were made after entry of the Aurora Judgment, which saddled Allonhill with the $25 million dollar liability that Allonhill now alleges rendered it insolvent. Am. Compl. ¶ 44.

### (2) The Court Should Dismiss Count I for Avoidance of Constructive Fraudulent Transfers Under 11 U.S.C. § 548.

Count I seeks to avoid the $6,608,309.15 in payments Allonhill made to SLS between January and February 2014 (the "Transfers"). Am. Compl. ¶ 42. Allonhill continued to receive

---

[5] A discounted cash flow analysis is proper for both valuation and insolvency purposes. *See Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 362 (3d Cir. 2002) (citing cases) (accepting discounted cash flow methodology as a valuation tool); *In re Am. Classic Voyages, Co.*, 384 B.R. 62, 65 (D. Del. 2008) (accepting discounted cash flow analysis for evaluating insolvency in bankruptcy).

Cash Collections from Clients after the Closing Date (August 28, 2013). Am. Compl. ¶¶ 33, 40-41. Because SLS had acquired the accounts receivable and contracts under which those payments were made, Allonhill remitted these amounts to SLS. *Id.* at ¶ 46.[6]

For the same reasons Count VI should be dismissed for failure to allege lack of reasonably equivalent value, Count I should also be dismissed. *See supra* Part II(A)(1). Pursuant to the APA, SLS purchased Allonhill's accounts receivable and Allonhill's contracts with customers. Amounts collected by Allonhill post-closing were transferred to SLS in exchange for the value that SLS provided to Allonhill under the APA. As set forth above, Allonhill has failed to allege that the value provided by SLS pursuant to the APA was not reasonably equivalent to the value of the assets transferred.

Count I should also be dismissed for failure to plead insolvency for the same reasons as set forth above. While Counts VI and I concern transfers that occurred approximately six months apart, Allonhill also pleads no allegations about its financial condition at or around the time of the Transfers (January to February 2014). As with Count VI, the Amended Complaint restates the statutory elements of insolvency verbatim, but does little more to suggest that Allonhill was insolvent at the time of the Transfers. Am. Compl. ¶ 83.

Allonhill's Count I allegations are not saved by the fact that the Transfers were made within 90 days of the Petition Date. *Id.* at ¶ 42. Unlike preference actions, *see* 11 U.S.C. § 547(f), "there is no presumption of insolvency of the debtor on and during the 90 days immediately preceding the filing of the petition as there is in an avoidance action under 11 U.S.C. § 547." *In re Schultz*, 250 B.R. 22, 28 n.3 (Bankr. E.D.N.Y. 2000); *see also Matter of Southmark Corp.*, 88 F.3d 311, 315 (5th Cir. 1996) ("Although the debtor's insolvency at the

---

[6] With the exception of $675,474.75, which was held by Allonhill until the effective date of the Plan, and is now held by a disbursing agent appointed by the Plan. *Id.* at ¶ 47.

time of transfer is an element of both § 547 and § 548, § 547[f] contains a presumption of insolvency whereas § 548 does not.").

> (3)    **Allonhill Fails to State a Claim for Avoidance of Constructive Fraudulent Transfers Pursuant to 11 U.S.C. § 544.**

Section 544 authorizes the avoidance of fraudulent transfers that are voidable under state law. *See* 11 U.S.C. § 544; *see also In re Charys Holdings*, 443 B.R. at 635. Pursuant to Section 544 and Colorado law, Counts II, III, VII, and VIII of the Amended Complaint seek the avoidance of the same transfers Allonhill seeks to avoid under Section 548 in Counts I and VI. The elements of a fraudulent transfer claim under Colorado's Uniform Fraudulent Transfer Act are nearly identical to a claim under Section 548. *See* C.R.S.A. §§ 38-8-105 & 106; *see also In re Charys Holdings,* 443 B.R. at 636 ("The elements of an avoidable transfer under UFTA or UFCA, as adopted by the individual states, do not substantially vary from the elements set forth in Bankruptcy Code section 548(a)(1)(B)."). For the reasons set out in Parts II.A, Allonhill's Section 544 claims also fail as a matter of law.

> (4)    **Allonhill's Claims for Recovery of the Allegedly Avoidable Transfers under 11 U.S.C. § 550 and C.R.S.A. § 38-8-108 Fail as a Matter of Law.**

Because Allonhill's avoidance claims under Sections 544 and 548 fail as a matter of law for the reasons set forth above, Allonhill's claims in Count IX to recover the value of the transfers at issue in Counts I-III and VI-VIII under Section 550(a) should also be dismissed. *See, e.g., In re Crucible Materials*, 2012 WL 5360945, at *9 n.6 ("Because the Trustee's avoidance claims all fail as a matter of law, the related claims to recover the value of the transfers at issue under section 550(a) are likewise barred.").

C.    ALLONHILL FAILS TO STATE A CLAIM FOR NEGLIGENT
       MISREPRESENTATION

(1)    **Allonhill Cannot Base a Negligent Misrepresentation Claim on
          Unfulfilled Promises Regarding Future Acts.**

Under Colorado Law, a claim for negligent misrepresentation requires a showing that
(1) the defendant supplied false information in business transaction; (2) the defendant failed to
exercise reasonable care or competence in obtaining or communicating that information; and
(3) the plaintiff justifiably relied upon the false information. *See Campbell v. Summit Plaza
Assocs.*, 192 P.3d 465, 477 (Colo. Ct. App. 2008). However, the claim must be based upon a
misrepresentation of a material past or present fact. *Larviere, Grubman & Payne, LLP v.
Philips*, No. 07-01723, 2011 WL 650001, at *17 (D. Colo. Feb. 11, 2011) (citing *Bedard v.
Martin*, 100 P.3d 584, 592 (Colo. Ct. App. 2004). "Thus, a negligent misrepresentation claim
cannot be based solely on the nonperformance of a promise to do something at a future time."
*Id; see also Alpine Bank v. Hubbel*, 555 F.3d 1097, 1107 (10th Cir. 2009) (" . . . [A] promise
cannot serve as the predicate for a negligent-misrepresentation claim.").

In the Amended Complaint, Allonhill alleges that Stewart failed to "exercise reasonable
care or competence in obtaining or communicating the information" conveyed to Ms. Allon by
Mr. Nadeau.   Am. Compl. ¶ 141.   These statements consist of the following promises and
statements regarding future events allegedly made by Mr. Nadeau:  (1) SLS's future ability to
promote the capital markets business by using an existing labor pool in Costa Rica; (2) SLS's
future utilization of SLS employees, including Ms. Allon; (3) the future payment of benefit
amounts owed to Allonhill employees and other incentives; and (4) promises as to how SLS
would operate the business post-closing.  These are all promises to do something at a future time,
or representations as to future (not past or present) facts, that are not actionable as negligent

misrepresentations.    Accordingly, Allonhill's claim for negligent misrepresentation must be dismissed.

### (2)    Allonhill's Claim for Negligent Misrepresentation Is Barred by the Terms of the APA.

Even if Mr. Nadeau's statements could support a claim for negligent misrepresentation, such claim would be barred by the integration and indemnity provisions of the APA.  The APA's integration clause contains clear and specific language limiting the parties' "understanding and agreement" to that contained in the APA and related documents:

> Entire Agreement.  This Agreement (including the Schedules and Exhibits hereto) and the Ancillary Agreements represent the entire understanding and agreement between the Parties with respect to the Transactions and supersedes all prior agreements among the Parties respecting the Transactions.

Am. Compl. Ex. A (APA) § 10.5.  The integration clause also expressly limits the parties' "rights, liabilities and obligations" to those exclusively in contract pursuant to the APA:

> The Parties have voluntarily agreed to define their rights, liabilities and obligations respecting the Transaction exclusively in contract pursuant to the express terms and provisions of this Agreement; and the Parties expressly disclaim that they are owed any duties or are entitled to any remedies not expressly set forth in this Agreement.

*Id.*   Independently, each provision of the integration clause bars Allonhill's negligent misrepresentation claim as a matter of law.  Together, the result is even clearer.

Under Colorado law, a "clear and specific" integration clause bars a party from asserting a negligent misrepresentation claim. *Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69, 72, 74 (Colo. 1991) ("A contract provision purporting to prohibit a party to the contract from asserting a claim of negligent misrepresentation must be couched in clear and specific language.") (citations omitted).  The first provision of the APA's integration clause is the type of "clear and specific" integration clause that preempts a negligent misrepresentation claim under Colorado law. *See Student Mktg. Grp.*, 247 Fed. App'x 90, 99 (10th Cir. 2007); *Steak n Shake*

*Enters., Inc. v. Globex Co.*, LLC, 110 F. Supp. 3d 1057, 1082 (D. Colo. 2015).  A side-by-side

comparison with the integration clause at issue in Student Marketing Group is instructive:

| APA[7] | Student Marketing Group[8] |
|---|---|
| This Agreement (including the Schedules and Exhibits hereto) and the Ancillary Agreements **represent the entire understanding and agreement between the Parties** with respect to the Transactions and **supersedes all prior agreements** among the Parties respecting the Transactions. . . . | This agreement and the confidentiality agreement including, without limitation, any and all exhibits and attachments to either such agreement, **constitute the entire agreement between the parties** hereto and **supersedes all previous agreements and understandings**, whether oral or written, express or implied . . . |

In *Student Marketing Group*, the court found that the above integration clause contained the type

of "specific language" necessary to preempt a negligent misrepresentation claim as a matter of

law. 247 Fed. App'x at 99.  The same result should hold here—a result further evidenced by the

fact that the APA was drafted by sophisticated parties.  Where "sophisticated parties who are

represented by counsel have consummated a complex transaction and embodied the terms of that

transaction in a detailed written document, it would be improper . . . to rewrite that transaction by

looking to evidence outside the four corners of the contract to determine the intent of the

parties." *Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995); *see also Steak n Shake Enters.*, 110

F. Supp. 3d at 1082-83.

Independently and in combination with the first provision, the second provision of the

APA's integration clause—excluding non-contractual duties and remedies—also bars Allonhill's

negligent misrepresentation claim.  *See Brooks v. Timberline Tours, Inc.*, 127 F.3d 1273, 1276

(10th Cir. 2007) ("A negligent misrepresentation claim can still be barred by an exculpatory

agreement prohibiting such tort claims.") (applying Colorado law); *see also Student Mktg. Grp.*,

247 Fed. App'x at 99.  The second provision of the APA's integration clause expressly restricts

---

[7] Am. Compl. Ex. A (APA) §10.5 (emphasis added).
[8] *Student Mktg. Grp.*, 247 Fed. App'x at 99 (emphasis added).

the parties' "rights, liabilities and obligations" to those in contract pursuant to the APA, and disclaims any duties or remedies not set forth in the APA. Am. Compl. Ex. A (APA) § 10.5. In other words, the parties specifically contracted away tort liability, including negligent misrepresentation claims. *See Keller*, 819 P.2d at 73.

This result is further evidenced by the APA's indemnity provisions. See Am. Compl. Ex. A (APA) Article VII. The APA's indemnity provision is the "sole and exclusive remedy" for breach of any representation "related to the subject matter" of the APA. *Id.* at § 7.5. Except for claims based on intentional fraud, Allonhill has no "other entitlement, remedy or recourse, whether in contract, tort or otherwise" and has waived all other causes of action for "any breach of any representation . . . relating to the subject matter of the [APA]." *Id.* (emphasis added). The alleged negligent misrepresentations of Mr. Nadeau all relate to the subject matter of the APA because they concern how SLS would run the business after the sale, whom it would employ and what benefits it would pay to those employees. All of these issues are addressed in some manner by the APA. Accordingly, the indemnity provision of the APA, agreed to by Allonhill after the alleged negligent misrepresentations, acts as a waiver by Allonhill of any tort claim based upon these alleged misrepresentations. When combined with the integration clause, this waiver of claims should act as a complete bar to Allonhill's negligent representation claims.

The Colorado Supreme Court has emphasized the importance of recognizing parties' contractual limitations on tort liability in this manner:

> Contract law is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining. Limiting tort liability when a contract exists between parties is appropriate because a product's potential nonperformance can be adequately addressed by rational economic actors bargaining at arms length to shape the terms of the contract. . . . Limiting the availability of tort remedies in these situations holds parties to the terms of their bargain. In this way, the law serves to encourage parties to confidently allocate risks and costs during their bargaining without fear

that unanticipated liability may arise in the future, effectively negating the parties' efforts to build these costs considerations into the contract.

*Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000).

Allonhill's claims regarding SLS's failure to properly operate the business post-closing must be based upon the representations and warranties made in the APA, and not on alleged oral promises made prior to the agreement. In fact, Allonhill has alleged this exact breach of contract claim in the Amended Complaint. Allonhill cannot seek "the same relief in both . . . contract and negligence claims." *Grynberg v. Agri Tech*, 10 P.3d 1267, 1269-70 (Colo. 2000). The duty to operate the Target Assets in a certain manner is "created by, and completely contained in, the contractual provisions," and Allonhill cannot be permitted to bring an independent claim for negligent misrepresentation. *Grynberg*, 10 P.3d at 1269-70; *see also A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 541 (Colo. Ct. App. 2011) (stating the scope of negligent misrepresentation under Colorado law "pertains to conduct that leads or induces another to enter into a transaction or agreement, not to representations directly related to performance of a contract").

### D. ALLONHILL'S FRAUDULENT TRANSFER CLAIMS AND NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED WITH PREJUDICE

Leave to amend may be denied on the grounds that "amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Allonhill has already amended its complaint once after SLS moved to dismiss its fraudulent transfer claims. That amendment failed to remedy the defects with respect to those claims. There is no basis to believe that if given leave to amend again Allonhill would be able to state claims for constructive fraudulent transfer.

Amendment would also be futile for Allonhill's negligent misrepresentation claim because the claim is barred by, inter alia, the clear and specific language in the APA's integration

clause.    Because Allonhill cannot replead around the integration clause, the negligent

misrepresentation claim should be dismissed with prejudice as well.

Dated:  August 17, 2016                          Respectfully Submitted,

                                                 **WOMBLE CARLYLE SANDRIDGE & RICE,
                                                 LLP**

                                                 */s/ Ericka F. Johnson*
                                                 Kevin J. Mangan (Del Bar No. 3810)
                                                 Ericka F. Johnson (Del. Bar No. 5024)
                                                 222 Delaware Avenue, Ste. 1501
                                                 Wilmington, Delaware 19801
                                                 Telephone:  (302) 252-4320
                                                 E-mail:  kmangan@wcsr.com
                                                 E-mail:  erjohnson@wcsr.com

                                                 - and -

                                                 Andrew J. Gallo (*admitted pro hac vice*)
                                                 Nathaniel P. Bruhn (*admitted pro hac vice*)
                                                 **MORGAN, LEWIS & BOCKIUS LLP**
                                                 One Federal Street
                                                 Boston, Massachusetts 02110
                                                 Telephone:  (617) 951-8000
                                                 E-mail:  andrew.gallo@morganlewis.com
                                                 E-mail:  nathaniel.bruhn@morganlewis.com

                                                 *Counsel to Stewart Lender Services, Inc.*